## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| *Plaintiff/Respondent*, | ) ) ) |
| v. | ) Case No. CIV-10-277-JHP ) |
| JAMES BRIAN WRIGHT, | ) ) |
| *Defendant/ Petitioner.* | ) |

### ORDER DENYING DEFENDANT'S MOTION FOR RELIEF

Defendant James Brian Wright ("Defendant") has filed a *pro se* motion under 28 U.S.C. §2255 seeking an order vacating his sentence and reinstating his right to file a direct appeal. The United States, by and through Assistant United States Attorney Linda A. Epperley, has filed a response in objection. After a full review of the file and pleadings in this case, including Defendant's numerous complaints of ineffective assistance of counsel, the Court finds and concludes that Defendant's motion should be denied because he waived all possible grounds for relief either through the appellate waiver in his plea agreement or through his failure to timely file a direct appeal.

On June 14, 2007, Defendant was charged with two counts of being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e)(1). (*Indictment*, Doc. #2). On October 16, 2007, Defendant pled guilty to both counts and a written plea agreement was filed with the court. (*Minutes of Change of Plea Hearing*, Doc. #20; *Plea Agreement*, Doc. #23). On February 29, 2008, Defendant was sentenced to 190 months of imprisonment in the custody of the Bureau of Prisons followed by 36 months supervised release. (*Judgment and Commitment*, Doc. # 30).

On August 1, 2008, Defendant filed a motion to vacate, set aside or correct sentence

pursuant to 28 U.S.C. §2255. (*Motion*, Doc. #31). The basis for the motion was that Defendant had been sentenced as an Armed Career Criminal. Following the February 2008 sentencing, one of the predicate convictions (a rape charge in Sequoyah County, Oklahoma) was vacated. (*Id.*). The government conceded that Defendant's motion was grounded in law and fact, and this Court granted the §2255 motion. (*Minute Order*, Doc. #32). On January 26, 2010, Defendant was re-sentenced to 115 months of imprisonment in the custody of the Bureau of Prisons followed by 36 months supervised release. (*Minutes of Sentencing Proceedings*, Doc. #40; *Amended Judgment and Commitment*, Doc. #43).

On February 2, 2010, Defendant filed a *pro se* objection to the sentence, which this Court struck from the record as Defendant was represented by counsel. (*Objection*, Doc. #41; *Minute Order*, Doc. #42). On March 5, 2009, Defendant then sent a letter to this Court, which was deemed a *pro se* motion to file appeal out of time. (*Motion*, Doc. #45). In the letter, Defendant alleged that he directed his court appointed counsel, Robert Ridenour, to file an appeal on his behalf, that Ridenour refused and that Ridenour failed to return communications from Defendant. (*Id.*). At this Court's direction, the Government and defense counsel filed responses. (Docs. #47, 49). Defendant also filed two other objections. (Docs. #48, 50).

On May 13, 2009, a hearing was held on the matter. (*Minutes of Proceeding*, Doc. #55; *Transcript of Proceedings*, Doc. #63). Defendant appeared with new court appointed counsel, Janice Purcell, but did not testify. Ridenour[1] testified that he had discussed the merits of appealing with Defendant and that following the discussion Defendant did not ask him to file an appeal. (*Id.*). On May 29, 2009, this Court issued its Opinion and Order denying Defendant's

---

[1] Since Defendant had two court appointed lawyers, this Order refers to the attorneys as "Purcell" (Ms. Janice Purcell) and "Ridenour" (Mr. Robert Ridenour).

motion to file an appeal out of time.  (*Order and Opinion,* Doc. #56).   On June 8, 2009, Defendant filed a Notice of Appeal through Purcell.  (*Notice of Appeal*, Doc. #58).   On March 29, 2010, the Tenth Circuit affirmed this Court's denial of the motion to file appeal out of time.  (*Decision from Circuit Court*, Doc. #72).

On July 26, 2010, Defendant filed this *pros se* Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. §2255.  (*Motion*, Doc. #78).  Defendant's motion[2] details eight claimed instances of ineffective assistance by Ridenour: (1) failure to file an appeal at Defendant's instruction; (2) failure to request a new presentence report prior to re-sentencing; (3) failure to request a downward variance; (4) failure to file an appeal and precluding Defendant from arguing unreasonable search and seizure; (5) failure to file an appeal and precluding Defendant from arguing that his right to an attorney was violated and that his confession was coerced; (6) failure to challenge the Indictment as being multiplicitous and facially invalid; (7) failure to argue that the plea agreement and Indictment were based on an invalid Arkansas warrant; and (8) failure to argue that the Indictment was based on misinformation and that Defendant's guideline range and offense level were miscalculated.  Though not set forth as a distinct claim of error, Defendant also alleges that he told Purcell he wanted to testify at the May 13, 2009 hearing, but Purcell would not allow Defendant to testify.  (*Motion*, Civil Doc. #1, at 4).

This Court first considers whether the instant motion is barred by Defendant's plea agreement because  "a  waiver of § 2255 rights in a plea agreement is generally enforceable . . .

---

[2] Defendant filed his original motion on July 26, 2010,  (*Motion*, Civil Doc. #1), and filed a second document, (*Amendment/Supplement*, Civil Doc. #3), on August 2, 2010.  Defendant titles the document an amendment, but it is more properly a supplement.  For simplicity and clarity, the Court refers to these documents collectively as one motion.

.” ***United States v. Cockerham***, 237 F.3d 1179, 1181 (10th Cir. 2001).

This Court is to consider three factors in determining whether Defendant's waiver is enforceable in this collateral proceeding: "(1) whether the [§ 2255 motion] falls within the scope of the waiver of [postconviction] rights; (2) whether the defendant knowingly and voluntarily waived his [postconviction] rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." ***United States v. Hahn***, 359 F.3d 1315, 1325 (10th Cir. 2004) (*en banc*)(reviewing a waiver of appellate rights).

Defendant's written plea agreement contains the following language in a section titled "Waiver of Appeal and Post Conviction Relief":

> Defendant expressly waives the right to appeal defendant's sentence on any ground, except to challenge 1) an upward departure from the applicable guideline range as determined by the Court and 2) use of Sequoyah County, Oklahoma Case Number CF-94-55 as grounds for enhancement pursuant to 18 U.S.C. § 924(e)(1). ***Defendant specifically waives any appeal rights*** conferred by Title 18, United States Code, Section 3742, ***any post-conviction proceedings, and any habeas corpus proceedings***. Defendant is aware that Title 18, United States Code, Section 3742 affords defendant the right to appeal the sentence imposed. Defendant is also aware that the sentence herein has not yet been determined by the Court. Defendant is aware that any estimate of the probable sentencing range that defendant may receive from his attorney, plaintiff, the probation office, or any agents of such parties, is not a promise, and is not binding on plaintiff, the probation office, or the Court. Realizing the uncertainty in estimating what sentence defendant will ultimately receive, ***defendant knowingly waives the right to appeal the sentence*** (except as to an upward departure and use of Sequoyah County, Oklahoma case number CF-94-55 for enhancement pursuant to 18 U.S.C. § 924(e)(1)) ***and agrees not to contest such sentence in any post conviction proceeding, including but not limited to writs of habeas corpus*** or coram nobis concerning any and all motions, defenses, probable cause determinations, and objections which defendant has asserted or could assert to this prosecution and to the court's entry of judgment against defendant and imposition of sentence, in exchange for the concessions made by the United States in this agreement and the execution of the agreement itself.

(*Plea Agreement*, Doc. #23 at 7-8, ¶18)(emphasis added).

Defendant's claims clearly fall within the plea waiver. The first ***Hahn*** factor is satisfied

because the claims do not involve an upward departure from the applicable guideline range nor the use of the Sequoyah County conviction for enhancement purposes  The second *Hahn* factor is also satisfied as Defendant has not argued that he involuntarily waived his post conviction rights to challenge his sentence and conviction.  As for the third *Hahn* factor, this Court is guided by the Tenth Circuit's description of " a miscarriage of justice":

> Appellate waivers are subject to certain exceptions, including [1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful. [*United States v.*] *Elliot*, 264 F.3d [1171,] 1173 [(10th Cir. 2001)](citing *United States v. Cockerham*, 237 F.3d 1179, 1182 (10th Cir. 2001).

359 F.3d at 1327.  (internal quotation marks omitted).  Here, only one of these grounds is even arguably applicable — that Defendant's plea itself was invalid because of ineffective assistance of counsel.  Yet, while Defendant has asserted numerous claims of ineffective assistance, this is not one of them.  The plea agreement waiver will be enforced in this case and Defendant's claims are barred by his waiver.

Even if this Court were to determine that Defendant did not waive his right to file this §2255 motion, none of Defendant's ineffective assistance of counsel claims warrant relief under *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984):

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defendant.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or [] sentence resulted from a breakdown in the adversarial process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687-688 (1984).

Evaluation of ineffective assistance claims is a fact intensive inquiry, requiring this Court to determine "whether counsel's assistance was reasonable considering *all the circumstances*." *Id.*, at 688 (emphasis added). As the Supreme Court explained in ***Strickland***, "representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.*, at 693. Further, this Court must give great deference to defense counsel's reasoned choice of action.

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance: that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.*, at 689 (internal citations omitted). See also ***Boyd v. Ward***, 179 F.3d 904, 915(10th Cir. 1999)("[T]hose accused of crimes, even capital crimes, are entitled only to a reasonable and adequate defense, not the defense which, in hindsight, they believe would have been best.")

The party claiming ineffective assistance bears a heavy burden of proving that the claimed errors actually had an adverse effect on his defense. Defendant must show more than "that the errors had some conceivable effect on the outcome of the proceedings [as] [v]irtually every act or omission would meet that test." ***Strickland***, 466 U.S. at 693. The reason for such a heightened burden of proof is that "the presumption that a criminal judgment is final is at its strongest in collateral attacks on the judgment." *Id.*, at 697. Defendant is required to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Id.*, at 694. None of Defendant's claims satisfy the requirements set forth in ***Strickland***.

Defendant claims that he met with Ridenour following sentencing and instructed Ridenour to file an appeal on Defendant's behalf. (*Defendant's Motion*, at 3). Defendant further claims that Ridenour refused to file the appeal as Ridenour believed "there were no appealable issues to be raised." (*Id.*) According to Defendant, Ridenour was ineffective in failing to follow Defendant's instructions and in failing to preserve Defendant's direct appeal rights.

The Court notes, however, that both this Court and the Tenth Circuit have already ruled unfavorably on Defendant's arguments. Following a hearing, this Court found that:

> Defendant argued his attorney failed to file a Notice of Appeal after being requested by Defendant to do so. Federal Public Defender Robert A. Ridenour testified that to the contrary, he discussed the merits of any appeal with Defendant and advised him there were no valid grounds for an appeal. He testified he did not, however, refuse to file an appeal. Consequently, there is no evidence or showing of "excusable neglect or good cause" which would warrant an extension to file a notice of intent to appeal. . . . Further, as part of the written plea agreement in this case, the defendant waived his right to appeal the sentence.

(*Order and Opinion*, Doc. #56, at 1-2).

In affirming, the Tenth Circuit noted that "in his plea agreement, Mr. Wright generally waived his right to appeal his sentence" and that "Mr. Ridenour informed Mr. Wright that there was no legally sound basis on which he could appeal, and at the end of the discussion, Mr. Ridenour believed Mr. Wright did not wish to pursue an appeal." ***United States v. Wright***, 370 Fed. Appx. 906 (10th Cir. 2010)(*Order and Judgment*, Doc. #72, at 2). The Tenth Circuit found that this Court did not abuse its discretion in ruling that Defendant's motion lacked merit. (*Id.*, at 3). Accordingly, the collateral estoppel doctrine bars Defendant from reasserting the failure to file a timely appeal at this juncture.

Defendant relies upon ***Barger v. United States***, 204 F.3d 1180, 1182 (8th Cir. 2000), to

support of his contention that failure to file a timely appeal as instructed automatically results in ineffective assistance regardless whether injury or prejudice is shown. That opinion is not binding on this Court and is inconsistent with Tenth Circuit law. The Tenth Circuit does instruct that "every direct criminal appeal must be briefed on the merits by counsel and accordingly by the court unless, after thorough review of all pertinent proceedings, the appeal is determined initially by counsel and then independently by the court to be wholly frivolous." *United States v. Snitz*, 342 F.3d 1154, 1157 (10th Cir. 2003). Here, any direct appeal would have been frivolous considering Defendant's waiver of his appellate rights. He simply cannot show any injury or prejudice from Ridenour's failure, even if so instructed, to file an appeal.

Defendant also claims that Ridenour's failure to request a new Pre-sentence Investigation Report ("PSR") violated his Fifth, Sixth and Eighth Amendment rights, including the right to be free from "unnecessary and overburdensome restraint." (Defendant's Motion, at 7). Defendant asserts that the Federal Bureau of Prisons has assigned him to a high-security facility used primarily for sex offenders.

Ridenour was questioned about the PSR by Purcell at the May 13, 2009 hearing. When asked about his decision not to seek a revised PSR, Ridenour responded as follows:

> Mr. Ridenour: I'm not sure what the modification of a report would have accomplished. I don't know exactly what I would have requested. I guess I could have said to the probation officer, probation officer, we object to the inclusion of this behavior on the rape as a - - as part of the presentence report.
>
> But the fact is that those facts are always going to be in the presentence report because that's the other behavior that routinely is put in presentence reports. I can't really make a good-faith objection to inclusion of facts that are contained in the court file for the court to be able to

|                  |                                                                                                                                                                                                                                                                                                                                                                                     |
|------------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                  | consider.  It's the court's duty to consider those things.  It would have been groundless for me to try to - -                                                                                                                                                                                                                                                                      |
| Ms. Purcell:     | You don't think there would have been any mitigating situations, such as his mental health history or anything like that, that would have helped him not be placed in sex-offender treatment even though he doesn't have a conviction for a sex offense?                                                                                                                            |
| Mr. Ridenour:    | Well, Ms. Purcell, no, I don't think it probably would have made a big bit of difference because ultimately the information concerning sex offenses would have been included in the presentence report.  Whether there was a conviction or not, that stuff was still going to be in the presentence report and the Bureau of Prisons is going to act accordingly on that.  They're not going to probably appreciate the niceties of vacation of conviction whenever they go to treat somebody. |

(*Transcript of May 13, 2009 Motion Hearing*, at 18-19).

Defendant argues that the "inaccurate" PSR "prejudiced him before the sentencing court and further caused him to be subjected to confinement more restrictive in nature." (*Defendant's Motion,* at 6).  The Court first notes that it presided over both sentencing hearings and ruled on the initial 2255 motion.  As such, the Court was well aware of the case's history and understood that Defendant's rape conviction had been vacated.  The rape charge would still have appeared in the PSR as part of Defendant's criminal history as "other criminal conduct" rather than an adult conviction and removing the one point would still have resulted in a Criminal History Category of VI.  See *Presentence Report*, at ¶44 ("The defendant has a total of thirty (30) criminal history points.  Any number of points exceeding thirteen (13) criminal history points establishes a Criminal History Category of VI. Sentencing Table, U.S.S.G. §5A.").  Ridenour's representation was not ineffective and Defendant did not suffer prejudice.

Next, Defendant alleges that Ridenour was ineffective in neglecting to properly investigate Defendant's life history and mental health history and in failing to ask for a

downward sentencing variance based on those factors. (*Defendant's Motion*, at 9).   Purcell also questioned Ridenour on this matter at the May 13, 2009 hearing:

> Ms. Purcell: Would you go ahead and file a motion for a variance based upon his history, mental history, family history?
>
> Mr. Ridenour: So you're asking me, Ms. Purcell, is that all the facts as given as they are, would I or should I have filed a motion to vary? In my legal estimation, should I have asked the court to vary from whatever the guidelines were at that point?
>
> Ms. Purcell: Yes.
>
> Mr. Ridenour: When we came back before Judge Payne?
>
> Ms. Purcell: Yes.
>
> Mr. Ridenour: I can't agree that I would. Mr. Wright had probably some of the - - he had the highest criminal score of most anybody I had ever seen at that point and he is however old he is. Some of it, you know, was pretty ugly.
>
> Regardless of whether the rape conviction had been overturned or not, the facts were still there. I mean, I didn't- it would have been a waste of time to file a motion to vary, particularly since we've kind of gotten a break from getting to the 15-year to the 10-year.

Because Ridenour conducted a reasonable investigation into Defendant's criminal and mental health history, his considered decision not to move for a variance is a matter of strategy and entitled to a presumption of reasonableness.

> Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. . . . When the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

*Stickland*, at 691.

Again, even if there were a deficiency in representation, Defendant cannot satisfy the prejudice prong of the *Strickland* test. Defendant has a lengthy criminal history. At the time of the PSR was prepared, Defendant had a total of thirty (30) criminal history points. Any number of points exceeding thirteen (13) criminal history points establishes a Criminal History Category of VI. (*Pre-sentence Report*, at 12, ¶ 44)(relying on Sentencing Table, U.S.S.G. §5A). Had a motion for variance been filed, the motion would have been denied given Defendant's extensive criminal history. Accordingly, he cannot prove that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, at 694.

Defendant next argues that since no appeal was filed, Ridenour deprived him of the ability to question the seizure of firearms[3] and the validity of his confession before an appellate court. Initially, Defendant is procedurally barred from asserting in a petition for collateral relief, any issues that should have been raised on direct appeal. *United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993). Defendant concedes that this issue should have been raised on direct appeal and that the failure to file a direct appeal resulted in a procedural default. (*Defendant's Motion*, at 11). Defendant cannot overcome the procedural bar "unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *Id.* See *United States v. Bolden*, 472 F.3d 750, 751-52 (10th Cir. 2006)(holding procedural default barred ineffective assistance of counsel and other claims defendant wished to preserve for Supreme Court review) and *United States v. Heltzel*, 184 Fed. Appx. 720, 721-722 (10th Cir. 2006) (denial of §2255 upheld on appeal where "failure to raise the issues on direct

---

[3]Specifically as to his Fourth Amendment claim, such "violations are not reviewable in a §2255 motion when the federal prisoner has had a full and fair opportunity to litigate the Fourth Amendment claim at trial and present issues on direct appeal." *Cook*, 997 F.2d at 1317.

appeal could not be excused because Ms. Heltzel had 'not stated any facts or presented any evidence to support any of the claims she has raised' . . . and therefore had not shown cause and prejudice or a fundamental miscarriage of justice.").

Both this Court and the Tenth Circuit have previously ruled that Defendant is unable to show good cause for his procedural default. Additionally, there can be no miscarriage of justice here because "a 'fundamental miscarriage of justice' means only that the petitioner is actually innocent of the offense." ***United States v. Richards***, 5 F.3d 1369, 1371 (10th Cir. 1993). Defendant cannot claim actual innocence. He has signed a written plea agreement setting forth the factual basis for the charges and confessed those facts before this Court:

> Defendant agrees that if this matter were to proceed to trial, the United States could prove the following facts beyond a reasonable doubt, and that these facts accurately represent the defendant's provable offense conduct and specific offense characteristics: COUNT 1: On February 22, 2007 I had a Browning, Model BuckMark, .22 caliber semi automatic pistol, (S/N 515MX18953) concealed under the mattress in my residence in Sallisaw, Sequoyah County, Oklahoma. At the time I possessed this firearm I had previously been convicted of a crime punishable by imprisonment for more than one (1) year. I agree this firearm was manufactured outside the State of Oklahoma. COUNT 2: On February 22, 2007 I was driving a Chevrolet pickup in Sallisaw, Sequoyah County, Oklahoma and I had a Charco, Model Off Duty .38 Spl., .38 caliber revolver (S/N 1106704) under the front seat. At the time I possessed this firearm I had previously been convicted of a crime punishable by imprisonment for more than one (1) year. I agree this firearm was manufactured outside the State of Oklahoma.
>
> Defendant understands that defendant will have to swear under oath to the accuracy of this statement, and if defendant should be called upon to testify about this matter in the future, any inconsistencies in such testimony may subject defendant to additional penalties of perjury which may be enforced by the United States under this agreement.

(*Plea Agreement*, Doc. #23, at 9-10, ¶22).

While Defendant has not specifically alleged that Ridenour was ineffective in allowing Defendant to plead guilty, such an argument would not succeed. A guilty plea "cannot be attacked as based on inadequate legal advice unless counsel was not 'a reasonably competent

attorney' and the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" *Strickland*, 466 U.S. at 687 (citing *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)(prisoners, who entered guilty pleas on the advice of counsel, were not entitled to a hearing on habeas corpus claims alleging that their confessions were coerced)). As the Tenth Circuit recognizes, a defendant who is "simply expressing his subsequent misgivings about his guilty plea" does not claim error which rises to the level of a miscarriage of justice. *United States v. Ferguson*, 360 Fed. Appx. 969, 974 (10th Cir. 2010)(enforcing appellate waiver against defendant who appealed the denial of his motion to withdraw guilty plea).

Next, Defendant claims that it was ineffective assistance for Ridenour not to challenge the Indictment as multiplicitous. This issue was also addressed during the May 2009 hearing:

| | |
|---|---|
| Ms. Purcell: | Okay. Now, on the two other charges, did Mr. Wright present that he believed they were multiplicitous? |
| Mr. Ridenour: | The two 922(g) counts? |
| Ms. Purcell: | Yes. |
| Mr. Ridenour: | During the course of the - - of the initial proceedings, no. To be - - at the time that he came back for the resentencing before Judge Payne, I believe that Mr. Wright had filed or written a motion or a letter to the court objecting to the counts in that - - in that case as he believed that they were multiplicitous. |

* * *

| | |
|---|---|
| Ms. Purcell: | Okay. So did you meet with him to discuss this situation? |
| Mr. Ridenour: | We met at the Muskogee County Jail prior to us going before Judge Payne. |
| Ms. Purcell: | Okay. So prior to sentencing? |
| Mr. Ridenour: | Yes. |
| Ms. Purcell: | And at sentencing did he once again ask to speak with you |

|                | about the situation of these counts that he believed were pertinent? |
|---|---|
| Mr. Ridenour:  | What we initially did was when I met with him at the jail, I explained to him that the multiplicity argument wasn't a good, sound legal argument, because, if my memory is correct, that there were two separate occasions that led to the discovery of the firearms. |
|                | Secondly, I thought that I- - I did. I said, we're kind of past that, because we had pleaded and issues of multiplicity actually - - and I explained that to Mr. Wright, is that multiplicity is something that is generally dealt with by if you're charged with, say, different counts. |
|                | Like if you got a 922(g) for possession of a firearm by a felon and, say, that person is also a drug-user or, say, that person is prohibited in some other way, then the government is allowed under the law to file each of those, you know, what seem, to be the same sort of crime based upon the same gun, and then ultimately go to trial on those. Ultimately, then if the jury finds, why, we're guilty on all three, then the court dismisses the other ones because of multiplicity. |
|                | Mr. Wright and I talked about that when we met before sentencing with Judge Payne and I told him that that argument wasn't valid. |
| Ms. Purcell:   | Okay. Now, if it was all during the same search and arrest, could it possibly be valid? |
| Mr. Ridenour:  | No. Because again- - well, there were two separate guns. |
| Ms. Purcell:   | Right. |
| Mr. Ridenour:  | And so I think the government can choose to file separate counts, if they choose to. |

(*Transcript of May 13, 2009 Hearing*, at 9-11). Again, since Ridenour performed an adequate investigation of the facts and researched the relevant law, his decision is entitled to a presumption of effectiveness. See **Strickland**, at 689-691.

Defendant contends that the Indictment and Plea Agreement were unconstitutional and

facially invalid because both documents contained the rape conviction and subsequent charges or convictions relating to that sex offense.  Defendant further contends that the Government knew the information provided to the grand jury was inaccurate.  These assertions are plainly meritless. Defendant's rape conviction was not vacated until  May 22, 2008, well after the grand jury proceedings, the indictment, the plea agreement and the original sentencing.   At all relevant times, the conviction was valid.  This Court specifically finds that there is no evidence supporting Defendant's accusation that the Government was aware of any flaw in the rape conviction.

Next, Defendant argues that the vacating of his rape conviction requires this Court to go back in time to the date of the conviction and declare "all charges relating to or as a result of [the rape conviction] unconstitutional and invalid as well."  (*Defendant's Amended Motion*, at 4). Defendant is flatly wrong in his interpretation of current Supreme Court and Tenth Circuit precedent.  In *Lewis v. United States*, the Supreme Court held that the federal firearms statutes "prohibit a felon from possessing a firearm despite the fact that the predicate felony may be subject to collateral attack on constitutional grounds."  445 U.S. 55, 65 (1980).  *Lewis* involved a defendant who challenged his felon in possession of a firearm conviction on the basis that he was denied his right to counsel before pleading guilty on the predicate felony.   The Court held there was no due process violation, stating:

> The federal gun laws, however, focus not on reliability but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons.  Congress' judgment that a convicted felon, even one whose conviction was allegedly uncounseled, is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational.

*Lewis*, at 67.  *Lewis* dealt with a constitutional challenge to the predicate felony, but the Tenth Circuit has applied the *Lewis* principles to procedurally defective convictions.

In *United States v. Mayfield*, the defendant challenged federal firearms convictions on the basis that he was only seventeen when he committed the predicate offense and was sentenced as an adult when Kansas law required that he be processed under the juvenile code. 810 F.2d 943 (10th Cir. 1987). The district court granted Mayfield's motion for relief finding that, since Mayfield was a juvenile, the district court lacked jurisdiction and the conviction was invalid from its inception. The Tenth Circuit reversed, holding:

> The greatest problem with the district court's reasoning, however, is its conclusion that, because the state court lacked jurisdiction, Mayfield's conviction is and always has been void. This conclusion ignores the fact that the issue of whether a court has proper jurisdiction is a legal one and, hence, no conviction is "void from its inception" for lack of jurisdiction until a court with review authority has so declared. While Mayfield's prior conviction became void when the federal district court granted his in limine motion, it was not void when Mayfield allegedly purchased the weapons. Mayfield was, at that time, a convicted felon. As such, he allegedly violated the law by purchasing a firearm, and the government should have been allowed to proceed with its case against him.

*Mayfield*, at 946.

Similarly, Defendant was properly charged with failure to register. At the time he failed to register, Defendant had a felony conviction for rape. The state of Arkansas properly issued a felony warrant for Defendant when he failed to surrender as required. Defendant was and continued to be convicted of the rape charge until it was vacated on or about May 22, 2008. Accordingly, the information in the Indictment and in the Plea Agreement was correct at the time those documents were filed and Defendant is not entitled to collateral relief.

Defendant also argues that in calculating the proper sentencing range under the guidelines, this Court should have removed all points for any conduct stemming from or relating to the 2000 rape conviction. This Court agrees with the Government that Defendant's criminal history and offense levels were properly calculated with the exception of the one point awarded

for the rape conviction, which should be deducted from Defendant's criminal history rather than from his offense level. Yet, this correction does not change the outcome under the Guidelines because he still falls in Category VI due to his extensive criminal history. Defendant's sentence is within the Guidelines range[4] for an offense level of 23 and a criminal history category of VI. Moreover, he cannot establish that his sentence would have been different had a different calculation been used, where this Court retains the discretion "to impose a sentence reflecting the seriousness of defendant's past criminal conduct." *United States v. Cox*, 83 F.3d 336, 340 (10th Cir. 1996).

Though not set forth as a distinct claim, Defendant also takes aim at Ms. Purcell. He states as follows in ¶24 of the Affidavit attached to his motion: "On May 13, 2009 the hearing was held, Robert Ridenour testified, Janice Purcell would not allow me to get on the stand for myself, and refused to address the Court with the issues that I had addressed with her the previous day." (*Defendant's Amended Motion*, Affidavit at 6, ¶24). To avoid any need to revisit this matter, this Court will address this argument even though not specifically set forth as an allegation by Defendant.

Defendant initially waived his right to appear at the hearing, but later decided to attend. (*Purcell's Affidavit*, at ¶7). Contrary to Defendant's assertions, Purcell discussed with Defendant whether he wanted to testify at the hearing. During their discussion, Defendant mentioned that he was concerned about how his testimony might impact his other pending state matters. Following their discussion, Defendant advised Purcell that he did not desire to testify at the hearing. (*Id.*, at ¶6). Defendant never asked to testify and Purcell never denied him the right to

---

[4] The sentencing range for an offense level of 23 with a category VI criminal history is 92-115 months. See Pre-sentencing Report, at 16 ¶67.

testify. (*Id.*, at ¶7).

Finally, none of the issues set forth in Defendant's current §2255 petition were raised in his first §2255 motion. Therefore, supplementing all of the other reasons for denying relief to Defendant, this Court also concludes that granting relief on newly-raised issues would constitute an abuse of the writ:

> Abuse of the writ occurs when claims are raised for the first time in a second or subsequent habeas petition or §2255 motion. . . These claims will be dismissed unless a defendant can show cause for his failure to raise the claim in the earlier habeas or §2255 proceeding and prejudice, therefrom, or can show that a fundamental miscarriage of justice will result.

*United States v. Cook*, 997 F.3d 1312, 1318 (10th Cir. 1993).

Accordingly, for all the reasons set forth herein, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant's motion for relief is denied.

Dated this 15th day of December, 2010.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma